Hammond v. Bookwalter *et al.*

Filed March 20, 1895.

---

No. 1,368.

HAMMOND *v.* BOOKWALTER ET AL.

INSTRUCTIONS TO JURY.—*Test of Correctness.*—The test to be applied in determining the correctness of an instruction is not whether it states the law correctly, but does it state the law correctly as applied to the evidence and the facts under the issues.

AGENCY.—*Broker.—Real Estate.—Agent Interested as Purchaser.—When Entitled to Commission.*—If one employ a firm of real estate brokers to procure a purchaser for certain real estate, and the brokers pro-

cure a sale thereof to a syndicate of which one of the brokers is a member, the brokers can not collect commission for such sale unless it is made to appear that the principal, knowing the interest of one of such brokers (his agent) in the syndicate purchasing the property, specially undertook and agreed to compensate them for making the sale.

SAME.—*Rule Where Agent's Interest Conflicts With His Principal's.— Burden of Proof.*—Where it appears that the interests of the agent and those of his principal conflict, the courts will subject the acts of the agent to the closest scrutiny and infer that he acted corruptly and from self-interest in all cases of doubt, thus casting upon the agent the burden of proving the good faith and honesty of the transaction, and it will not suffice to show that the principal has received all that he directed the agent to ask, or that the amount received was all · that could have been obtained from a stranger; for the agent can not act in the dual relation of both agent and principal.

From the Marion Superior Court.

*D. W. Howe, C. F. Coffin, J. O. Spahr* and *J. H. Kingsbury,* for appellant.

*W. N. Harding, A. R. Hovey* and *C. M. Cooper,* for appellees.

Ross, C. J.—This action was brought by the appellees against the appellant to recover commissions for the sale of real estate.

The appellant's assignment of errors simply calls in question the ruling of the court below in overruling his motion for a new trial, under which motion the only questions urged for the reversal of the judgment of the court below arise on the refusal of the court to give instructions numbered one and two of those asked by appellant, and on the giving by the court of its own motion over the objections of the appellant, of instructions numbered three and four of those given.

Instruction number three of those given by the court is as follows:

"If you find from a fair preponderance of the evidence that at the time described in the complaint, the

plaintiffs were real estate brokers and agents, doing a general business in the city of Indianapolis, and that the defendant employed them to sell for him the real estate described in the complaint, or to find a purchaser for the same; and you further find from a fair preponderance of the evidence that they procured a purchaser acceptable to the defendant, and that he sold said property to the person so obtained for him by the plaintiffs, then your finding should be for the plaintiffs; or, if you find from a fair preponderance of the evidence, that the defendant agreed to pay them the sum described in the first paragraph of complaint for the procuring of a purchaser for said real estate, then your finding should be for the plaintiffs, with interest at the rate of six per cent. per annum from demand thereof."

The objection urged to this instruction is that it is not applicable to the evidence; that it is based on a state of facts at variance with the theory of the complaint, hence, naturally tended to confuse and mislead the jury.

An instruction may often state the law accurately, as a mere abstract legal proposition, and yet be inapplicable to the evidence admitted under the issues in the case. The test to be applied, therefore, in determining the correctness of an instruction is not whether it states the law correctly, but does it state the law correctly as applicable to the evidence and facts under the issues. It is, therefore, the duty of the court to give to the jury only such instructions as are applicable to the evidence admissible under the issues, and to see that they are couched in such language as that they may not be misunderstood by the jury in applying the law to the facts as they may find them from the evidence.

The instruction above set out is not subject to the criticism urged against it by appellant's counsel.

Instruction number four reads as follows:

"If under my previous instructions, you find that the plaintiffs were acting as the defendant's agents for the sale of the real estate described in the complaint, and that as such agents they procured one Benjamin C. Wheat to become the purchaser of said real estate; and if you further find from a fair preponderance of the evidence that he purchased said real estate in trust for either of said plaintiffs, then it will be your duty to inquire whether the fact that one of the plaintiffs composed one of the persons in said syndicate was fully understood by the defendant, and whether all the facts and circumstances were revealed to him by the plaintiffs, and after such full knowledge of all the circumstances and facts, he deliberately and freely ratified the act of his agent; if you find from a fair preponderance of the evidence that the plaintiffs were the defendant's agents for the sale of said property, and if you find he did so ratify said sale under the circumstances as stated above, then the fact that one of the plaintiffs' firm was a shareholder in said syndicate to purchase said real estate, would not of itself defeat the plaintiffs' right to recover in this cause."

And instruction number two, which the appellant asked to be given, but was refused, is as follows:

"The plaintiffs claim, in substance, that they were acting as defendant's agents for the sale of certain of his real property, and that, as such agents, they procured one Benjamin C. Wheat to become the purchaser of such real estate. If you find that Wheat purchased such real estate in trust for a syndicate, composed of several persons, including either of the plaintiffs, then you should find for the defendant."

Counsel for appellant contend that "taken together, the above instruction refused and instruction number four given, raise the question whether a real estate agent

employed to sell his principal's property can himself become the purchaser of said property, *even* with the knowledge and consent of the owner, and recover a commission, in the absence of a new and special agreement for a commission, made at or after the time said agent presents himself as such purchaser? or at least an agreement made with special reference to the fact that in case the agent should purchase the property, he was to recover his commission as though the sale was made to a third party?''

The policy of the law is to exact from an agent the strictest integrity with reference to the duty owing from him to his employer. The rule, therefore, that prohibits the agent from representing interests antagonistic to those of his principal, stands upon the great moral obligation that one employed by another shall be honest in the performance of his duty to his employer, and not let self-interest conflict with his integrity.

In the case of *Simonds* v. *Hoover*, 35 Ind. 412, where the question presented was whether or not Simonds, who was employed by one Zellers to sell real estate for him, in making a sale to or exchange thereof with Hoover, could recover a commission from Hoover, who had also employed him to make a sale of his property. PETTIT, J., speaking for the court, says: ''Law and morals (which are the same) alike forbid that a man shall be the agent of two persons and receive pay from both in the transaction of business between them, where their interests are antagonistic. He can not, or at least he is not likely to, discharge his duty with fidelity to both.''

''The law does not allow a man to assume relations so essentially inconsistent and repugnant to each other. The duty of an agent for a vendor is to sell the property at the highest price; of the agent of the purchaser, to

buy it for the lowest." *Farnsworth* v. *Hemmer*, 1 Allen, 494.

How much more forcible the inhibition if the agent's own interests and those of his principal are opposed to each other. While the sense of duty might prevail over the motives of self-interest, the probability in many cases, and the danger in all cases, is that the dictates of self-interest will exercise a predominant influence, and supersede that of duty.

The rule is, therefore, a salutary one that forbids a person, who undertakes to act for another in a matter, from acting for himself with reference to the same matter. For, it is the aim of the law not only to ferret out and rectify the possible wrong which the agent may have committed against his principal, but, as far as possible, to throw around those acting in the capacity of agents such a bulwark of restraint as will remove all possible temptation. *Michoud* v. *Girod*, 45 U. S. 502 (554), and cases cited; *Dutton, Admx.*, v. *Willner*, 52 N. Y. 312; *Porter* v. *Woodruff*, 36 N. J. Eq.174.

And it may be said that in any case, where it appears that the interests of the agent and those of his principal conflict, the courts will subject the acts of the former to the closest scrutiny and infer that he acted corruptly and from a self-interest in all cases of doubt, thus casting upon the agent the burden of proving the good faith and honesty of the transaction. And it will not suffice simply to show that the principal has received all that he directed the agent to ask, or that the amount received was all that could have been procured from a stranger, for here, again, the rule applies that the agent can not act in the transaction in the dual position of both agent and principal.

The law, while it forbids the agent while acting as such from taking advantage of his principal by reason

of his position, does not forbid him from making a purchase direct from the principal, of the thing he is employed to sell, provided there is no concealment of the truth or fraud practiced. "If the agent buys directly from the principal, there is in one sense no relation of principal and agent existing between them in the negotiation, but they are both principals in the transaction; yet the law is so zealous of the rights of his former principal, that it requires the agent, before changing his position to that of principal in any negotiation in respect to that which has been the subject of the agency, to first put his principal on equal terms with himself by acquainting him with all that he has himself learned with regard to the property, including any facts or circumstances which could be supposed to influence the judgment of the principal in the transaction. In other words, the agent must acquit himself of all duties and obligations resulting from the former relation, so that he shall in the negotiation possess no advantage over the owner in consequence of that relation having existed, and the burden of proof is upon him to vindicate his fairness in the transaction. But this condition being fulfilled, there is nothing then to prevent the parties dealing with regard to the property in the same manner as if the relation of principal and agent never existed between them." Rapalje on Real Estate Brokers, p. 45, par. 26.

We recognize the strictness with which the courts uniformly hold to the rule of forbiddance above announced and fully concur therein, believing it to be founded not only upon considerations of policy, but upon the plainest principles of justice and equity.

Under the evidence in this case, which, to say the least, is far from convincing upon the question of the employment of the appellees by the appellant as his

agent to sell his property, we would be overruling the well settled rule above stated if we were to hold that the appellees were entitled to a commission for making a sale to themselves, and it does not alter the case that only one of the appellees was interested in the purchase. That he was interested is sufficient to invoke the application of the rule, unless it is also made to appear that the appellant, knowing the interest of the appellee Bookwalter in the syndicate purchasing the property, specially undertook and agreed to compensate appellees for making the sale. In other words, the relation of principal and agent ceased to exist, if it in fact did exist, as soon as appellee Bookwalter became the purchaser. When the agency was terminated his duties toward the appellant ceased, and the latter was no longer bound by his acts.

Counsel for appellee have cited many cases in which the courts have held that a party may represent both principals in a transaction and collect a commission from each. In all of those cases, however, it clearly appeared that the principals knew that the agent represented both, and yet each consented that he might act for the other in that capacity. In no case cited has it been decided that when the agent himself became the purchaser and the only promise or agreement made by the principal to pay the agent for making the sale was that made when he was originally employed to find a purchaser, the agent could collect a commission for making the sale. When the relation of principal and agent between appellant and the appellees ceased, which it did when the appellee Bookwalter became the purchaser, it required a new contract between them from that originally entered into to enable the appellees to occupy the dual positions of principals and agent.

The fourth instruction wholly ignores the necessity for

a new contract between the parties, but proceeds upon the theory that if the appellant knew that Bookwalter was the purchaser, and he consummated the sale and knew all the facts and circumstances, he is liable to appellees for their commission. As already stated, that is not the law, and we do not feel called upon to depart from the rule so well established.

The court, therefore, erred in giving the fourth instruction, for which reason the judgment will be reversed, with instructions to sustain appellant's motion for a new trial.

